**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


BARBARA HAWLEY,                      )
                                     )
            Plaintiff,               )
                                     )
      v.                             )          1:09CV246
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social               )
Security,                            )
                                     )
            Defendant.               )


**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Barbara Hawley, brought this action pursuant to
Sections 205(g) and 1631(c)(3) of the Social Security Act (the
"Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain
judicial review of a final decision of Defendant, the Commissioner
of Social Security, denying Plaintiff's claims for Disability
Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")
under, respectively, Titles II and XVI of the Act.  The Court has
before it the certified administrative record and the parties have
filed cross-motions for judgment.

**PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on April 6, 2005,
alleging a disability onset date of October 1, 2004.  (Tr. 11.)[1]
Her application was denied initially and upon reconsideration.
(Tr. 37-39, 44-48.)  Thereafter, Plaintiff requested a hearing de
novo before an Administrative Law Judge ("ALJ").  (Tr. 11.)  At the

---

[1] Transcript citations refer to the administrative record.

hearing on February 4, 2008, Plaintiff appeared along with her attorney and a vocational expert ("VE"). (Id.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. 20) and, on December 22, 2008, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion on this point Defendant's final decision (Tr. 3-6).

In rendering this disability determination, the ALJ made the following findings later adopted by Defendant:

1. [Plaintiff] meets the insured status requirement of the Social Security Act through June 30, 2008.

2. [Plaintiff] has not engaged in substantial gainful activity since October 1, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

. . . .

3. [Plaintiff] has the following severe impairments: major depressive disorder, recurrent, in full remission; personality disorder and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

. . . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has no exertional limitations and has the residual functional capacity to perform unskilled; simple, routine, repetitive tasks with less than frequent contact with coworkers and the public (less than frequent means less than one-third to two-thirds of an eight-hour workday).

(Tr. 13-15.)

Given the foregoing findings regarding residual functional capacity ("RFC") and the VE's testimony, the ALJ determined that Plaintiff could perform her past relevant work as a housekeeper. (Tr. 19.) Accordingly, the ALJ ruled that Plaintiff did not have a disability, as defined in the Act, from her alleged onset date of October 1, 2004, through the date of the decision. (Tr. 19-20.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the

case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u>

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating long-standing medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' ['SEP'] to determine whether a claimant is disabled." Id. (internal citations omitted).

The SEP has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (1999).[3] A finding adverse to the claimant at any of several steps compels a ruling of no disability. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is

_____

[2] "The [DIB] Program . . . provides benefits to disabled persons who have contributed to the program while employed. The [SSI] Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries the burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not have a disability. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, where the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust

_____

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

to a new job." <u>Hall</u>, 658 F.2d at 264-65.  If the Commissioner
cannot carry the "evidentiary burden of proving that [the claimant]
remains able to work other jobs available in the community," the
claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[5]

## Assignments of Error

In this case, the ALJ found that Plaintiff met her burden at
step one and further determined, at step two, that Plaintiff had
the following severe impairments:  "major depressive disorder,
recurrent, in full remission; personality disorder and borderline
intellectual functioning."  (Tr. 13-14.)  However, the ALJ
concluded, at step three, that Plaintiff did not satisfy a
disability listing and, at step four, that Plaintiff's RFC allowed
her to perform her past work as a housekeeper.  (Tr. 14-15.)
Plaintiff now contests the ALJ's findings at steps three and four.

As to step three, Plaintiff contends the ALJ should have
concluded Plaintiff met the mental retardation listing codified at
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) ("Listing 12.05C").
(Docket Entry 13 at 6-10.)  Plaintiff also asserts that, but for a
legally erroneous failure to credit the conclusion of a treating
physician that Plaintiff suffered from "marked" impairment of

---

[5]  A claimant thus can qualify as disabled via two paths
through the SEP.  The first path requires resolution of the
questions at steps one, two, and three in the claimant's favor,
whereas, on the second path, the claimant must prevail at steps
one, two, four, and five.  Some short-hand judicial
characterizations of the SEP appear to gloss over the fact that an
adverse finding against a claimant on step three does not terminate
the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds
that a claimant has not satisfied any step of the process, review
does not proceed to the next step.").

social functioning (including in dealing with the public, co-workers, and supervisors) and repeated episodes of decompensation, the ALJ would have had to rule that Plaintiff met 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 ("Listing 12.04") or, at a minimum, would have had to adopt a more circumscribed RFC. (See Docket Entry 13 at 10-14, 16.)  Finally, Plaintiff contends that, in addition to the ALJ's foregoing, allegedly errant omission from Plaintiff's RFC of "marked" limitations in social functioning, the ALJ reversibly erred by failing to include in the RFC (particularly as presented to the VE) certain "moderate" limitations in Plaintiff's social functioning, such that substantial evidence does not support the ALJ's step four determination. (Id. at 16.)

**1. Listing 12.05C**

According to Plaintiff, "[t]he ALJ erred in failing to find that [Plaintiff] meets Listing 12.05C." (Id. at 7.)  Listing 12.05C states as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for the disorder is met when the requirements in A, B, C, or D are satisfied.

> . . . .

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

In other words, Listing 12.05C requires:

-8-

1) "a showing of deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22 (Prong 1)," <u>Hancock v. Astrue</u>, ___ F.3d ___, ___, 2012 WL 19731, at *2 (4th Cir. 2012) (internal quotation marks omitted);

2) "a valid verbal, performance, or full scale IQ of 60 through 70 (Prong 2)," <u>id.</u> (internal quotation marks omitted); and

3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function (Prong 3)," <u>id.</u> (internal quotation marks omitted).

Plaintiff has cited evidence that she met Prongs 2 and 3. (<u>See</u> Docket Entry 13 at 8-9.) Conversely, Defendant has not defended the ALJ's decision that Plaintiff failed to satisfy any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (which includes Listing 12.05C) by challenging the sufficiency of Plaintiff's proof on Prongs 2 and 3. (<u>See</u> Docket Entry 15 at 5-11.) Instead, Defendant has asserted that the Court should affirm the ALJ's implicit conclusion at step three that Plaintiff fell short of meeting Listing 12.05C, because "[t]he ALJ noted that Plaintiff's 'level of adaptive functioning is not consistent with a diagnosis of mental retardation. The claimant is the head of her household and responsible for three children in school.'" (Docket Entry 15 at 6-7 (quoting Tr. 19); <u>see also</u> Tr. 14 ("[Plaintiff] testified that she has no difficulties caring for her personal needs, performing household chores, preparing meals or in caring for her family. [Plaintiff] handles her own finances and functions on a

day-to-day basis without assistance."), 18 (citing evidence from treating physician that Plaintiff "has demonstrated the ability to ask questions for help when needed, take public transportation, interact satisfactorily with other people (grocery shopping, church study group, and friends) albeit on a less than frequent basis, and she has been able to manage her own finances").)[6]

The question in this case thus becomes whether a determination adverse to Plaintiff on the "adaptive functioning" component of Prong 1 of Listing 12.05C can rest on these factual predicates:

1) Plaintiff "is the head of her household and responsible for three children in school" (Tr. 19);

2) Plaintiff "has no difficulties caring for her personal needs, performing household chores, preparing meals or in caring for her family" (Tr. 14);

3) Plaintiff "handles her own finances" (id.; accord Tr. 18); and

4) Plaintiff "has demonstrated the ability to ask questions for help when needed, take public transportation, . . . [do] grocery shopping, [and attend a] church study group" (Tr. 18).

The Court should conclude that the foregoing factual findings provide a sufficient basis to sustain Defendant's decision that Plaintiff failed to carry her burden under Prong 1 of showing "deficits in adaptive functioning," Hancock, ___ F.3d at ___, 2012 WL 19731, at *2, for at least two reasons.

_____

[6] Plaintiff has not challenged any of these specific findings from the ALJ's decision. (See Docket Entry 13 at 1-17.)

First, although Prong 1 of Listing 12.05C "does not expressly define 'deficits in adaptive functioning' . . . '[a]daptive activities' are described elsewhere in the [Mental Disorders] Listing . . . as 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.'" <u>Blancas v. Astrue</u>, 690 F. Supp. 2d 464, 476 (W.D. Tex. 2010) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.05 and 12.00(C)(1)) (emphasis added); <u>accord</u> <u>Hager v. Astrue</u>, No. 2:09CV1357, 2011 WL 1299509, at *2 (S.D.W. Va. Mar. 31, 2011) (unpublished). The record (as cited by the ALJ (<u>see</u> Tr. 14, 18, 19)) contains substantial evidence that Plaintiff can perform virtually all of these adaptive functions.

Second, the ALJ's findings regarding Plaintiff's demonstrated capacity to carry out relevant activities compares favorably to the level of functionality deemed sufficient to overcome the claimant's appeal in <u>Hancock</u>, ___ F.3d at ___ & n.3, 2012 WL 19731, at *5 & n.3. In other words, in <u>Hancock</u>, the Fourth Circuit upheld an ALJ's finding that the claimant failed to carry the burden of showing deficits in adaptive functioning under Prong 1 of Listing 12.05C and, in this case, the record contains evidence that Plaintiff performs relevant activities at least as well as did the claimant in <u>Hancock</u>, who had the following characteristics:

1) "the ability to shop, pay bills, and make change," <u>id.</u> at ___, 2012 WL 19731, at *5;

2) "takes care of three small grandchildren at a level of care that satisfies the Department of Social Services," id.;

3) "does the majority of her household's chores, including cooking and baking," id.;

4) "is attending school to obtain a GED," id.; and

5) "does puzzles for entertainment," id.[7]

Moreover, because (1) Prong 1 of Listing 12.05C requires a claimant to show deficits in adaptive functioning, (2) the ALJ specifically found that Plaintiff's "level of adaptive functioning" exceeds that required to establish mental retardation (Tr. 19), and (3) the ALJ's decision identified substantial evidence sufficient to support that finding, Plaintiff's contention that "[t]he ALJ erred as a matter of law in failing to assess specifically whether [Plaintiff] meets Listing 12.05C" (Docket Entry 13 at 6), does not warrant reversal.  See Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) (unpublished) ("Contrary to claimant's contention, the duty of explanation will be satisfied [in a Social Security case] when the ALJ presents 'us with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must

---

[7] Although the Fourth Circuit found these characteristics sufficient to support a finding of an absence of deficits in adaptive functioning, it did not intimate that those (or comparable) capabilities constituted the minimum that would suffice to support such a finding. See Hancock, ___ F.3d at ___, 2012 WL 19731, at *5 & n.3. Hancock thus provides a valuable comparison standard for assessing an ALJ's findings regarding Prong 1's adaptive functioning requirement, but does not identify an outer boundary in this context.

include specific reference to the evidence producing [the ALJ's] conclusion." (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983), and citing Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985))); see also Morgan v. Barnhart, 142 Fed. Appx. 716, 723 & n.6 (4th Cir. 2005) (applying harmless error standard in Social Security appeal); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").[8]

Under these circumstances, the Court should reject Plaintiff's arguments regarding Listing 12.05C.

## 2. Treating Physician Opinion

Plaintiff also claims that "[t]he ALJ erred in failing to credit the opinion of [Plaintiff's] treating physician, Dr. [Austin] Hall, whose opinions required a finding that [Plaintiff]

---

[8] Plaintiff similarly has failed to show any prejudice from any alleged error by the ALJ in assessing Plaintiff's credibility; indeed, Plaintiff has conceded that said assessment lacks any material bearing on the outcome of the case. (See Docket Entry 13 at 15 ("[T]he ALJ did not say specifically what he disbelieved about [Plaintiff's] testimony, or why. Even more important, however, is that *[Plaintiff's] own credibility is not really in issue*." (emphasis in original).) The assignment of error based on the ALJ's discussion of Plaintiff's credibility thus also affords no ground for reversal. See, e.g., Morgan, 142 Fed. Appx. at 723 & n.6; Fisher, 869 F.2d at 1057; Mays, 837 F.2d at 1364.

is disabled." (Docket Entry 13 at 10.) Specifically, Plaintiff asserts that the ALJ should have accepted Dr. Hall's findings that Plaintiff (1) "has marked loss of ability to interact appropriately with the public; marked loss of ability to accept instructions and respond appropriately to criticism from supervisors; and marked loss of ability to get along with co-workers and peers" (id. (citing Tr. 88)); and (2) "has marked difficulties in maintaining social functioning and . . . has had repeated episodes of decompensation" (id. (citing Tr. 88)).[9] According to Plaintiff, by declining to adopt Dr. Hall's conclusions on these points, the ALJ failed to give the opinion of a treating physician greater weight than the opinions of non-treating physicians as mandated by 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1), better known as the "treating physician rule." (See Docket Entry 13 at 11.)

The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(d) and 416.927(d). This special status stems from the ability of treating physicians to "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports

_____

[9] According to Plaintiff, had the ALJ followed Dr. Hall's foregoing findings, the ALJ would have had to conclude, at step three, that Plaintiff met Listing 12.04 (see Docket Entry 13 at 11 n.5) or, at least, would have had to formulate a more restrictive RFC than the one the ALJ used in resolving step four against Plaintiff (see id. at 16).

of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The treating physician rule also recognizes, however, that the nature and extent of each treatment relationship may appreciably temper the weight an ALJ affords it. 20 C.F.R. §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii).

Moreover, as subsections (2) through (4) of the treating physician rule detail, a treating physician's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2)-(4) and 416.927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178. Finally, opinions by treating physicians regarding the ultimate issue of disability never receive controlling weight. See 20 C.F.R. § 404.1527(e).

In this case, Plaintiff argues that the ALJ should have accepted Dr. Hall's opinions due to a lack of "persuasive contradictory evidence." (Docket Entry 13 at 11.) Plaintiff further claims that "the extent of the ALJ's reasoning in rejecting Dr. Hall's opinion" consisted of a single, conclusory statement noting that Dr. Hall's "'conclusions regarding [Plaintiff's] mental capabilities lack supporting documentation and does [sic] not warrant the weight given a treating physician[,] as he last treated

[Plaintiff] in July 2007 [more than six months before Dr. Hall rendered his opinions].'"  (Id. (quoting Tr. 19).)

In fact, the ALJ's detailed assessment of Dr. Hall's opinion covers more than a full page of the ALJ's decision.  (See Tr. 16-17, 19.)  Notably, the ALJ's decision chronicles a significant and continuing improvement in Plaintiff's mood, anger management, and medical compliance in 2007, as compared with records from 2005 and 2006.  (Tr. 17; see also Tr. 95-96.)  In contrast, the medical report furnished by Dr. Hall on January 31, 2008, neglects to mention this pattern of improvement or to include any meaningful explanation for the functional limitations he listed.  (Tr. 85-89.)  For this reason, the ALJ properly concluded that Dr. Hall's 2008 report conflicted with other substantial evidence - including Dr. Hall's own records - and afforded that report less than controlling weight.  Moreover, the ALJ incorporated a modified version of Dr. Hall's social functioning assessment, to the extent that it cohered with other medical evidence and opinion, by limiting Plaintiff to "no frequent contact with coworkers or the public."  (Tr. 19.)

Accordingly, the Court should reject Plaintiff's instant attack on the ALJ's decision.

### 3.  Vocational Expert Testimony

Finally, Plaintiff claims that, "[e]ven if the ALJ did not err in rejecting Dr. Hall's opinion, [the ALJ] was still obligated to include in his hypothetical question that [Plaintiff] has moderate limitation in concentration, persistence, and pace, and has at best borderline intelligence."  (Docket Entry 13 at 6.)  In questioning

a VE in a Social Security disability hearing, an ALJ must propound hypothetical questions that account for all of the claimant's limitations. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). However, "[t]here is no obligation to transfer the findings [from a mental impairment report] verbatim to the hypothetical questions." Yoho v. Commissioner of Soc. Sec., No. 98-1684, 168 F.3d 484 (table), 1998 WL 911719, at *3 (4th Cir. Dec. 31, 1998) (unpublished). So long as a hypothetical adequately encompasses the effects of a claimant's mental limitations, it suffices. See id.; accord Cox v. Astrue, 495 F.3d 614, 620 (8th Cir. 2007) (holding that proper hypothetical questions need only capture "the concrete consequences of a claimant's deficiencies").

Here, Defendant admits that the ALJ's hypothetical question failed to expressly mention Plaintiff's moderate limitation in concentration, persistence, and pace. (Docket Entry 15 at 19.) However, Defendant argues that, under the circumstances of this case, the ALJ "was not required to incorporate Plaintiff's moderate limitation in this area . . . in [the ALJ's] hypothetical to the VE . . . ." (Id.) This position has merit.

A medical consultant who prepared an assessment of Plaintiff's RFC, Bonny Gregory, concluded that Plaintiff had moderate difficulties in concentration, persistence, and pace, but that Plaintiff nonetheless remained (1) "capable of understanding & retaining simple instructions," and (2) "able to sustain attention & concentration for at least 2 hours." (Tr. 130-32.) Gregory thus opined that Plaintiff could perform "SSRTs [i.e., simple, routine,

repetitive tasks] in a low stress environment w[ith] limited social contact." (Tr. 132.) The ALJ's hypothetical question to the VE described a "functionally illiterate" individual "restricted to performing unskilled work that is simple, routine, repetitive type tasks" and "limited to contact with co-workers and the general public at [sic] a less than frequent basis." (Tr. 382.)[10] That description sufficiently conveyed Plaintiff's limitations as discerned by Gregory. In other words, the restriction to unskilled, simple, routine, repetitive tasks and limited interaction with others adequately accounted for Plaintiff's intellectual deficit and problems with concentration, persistence, and pace, in light of the evidence that Plaintiff can perform such tasks in two-hour blocks, as an eight-hour workday typically demands, see Perkins v. Astrue, No. EDCV-08-1383-OP, 2010 WL 375117, at *6-7 (C.D. Cal. Jan. 25, 2010) (unpublished) ("Defendant correctly points to Social Security Regulation ('SSR') 96-9p, which provides a guideline for customary breaks during a work-day as follows: '. . . a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.' Thus, customary breaks or 'normal breaks,' would reasonably occur approximately every two hours." (internal citation and footnote omitted)).

As a result, Plaintiff's instant challenge fails. See, e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008)

---

[10] "Unskilled work" constitutes a term of art in this context, defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

("The Eighth Circuit's decision in Howard [v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001)] is directly on point.  There, the court explicitly rejected a claim that an ALJ's hypothetical describing an ability to do 'simple, routine, repetitive work' failed to capture deficiencies in concentration, persistence, or pace.  The court noted the state psychologist's findings which concluded that the claimant, despite certain pace deficiencies, retained the ability to do simple, repetitive, routine tasks.  The medical evidence . . . in the present case reflects the same conclusion." (second internal citation to Howard omitted)); Parker v. Astrue, 792 F. Supp. 2d 886, 895-96 (E.D.N.C. 2011) (rejecting attack on ALJ's hypothetical premised on claim that "limiting the [claimant] to 'simple, routine, and repetitive tasks' did not account for [the claimant's] borderline intellectual functioning and moderate concentration difficulties" where "state psychologist found that [the claimant] was only moderately limited in the ability to maintain attention and concentration for extended periods").

Plaintiff's citation to various cases, including most notably Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004), Young v. Barnhart, 362 F.3d 995, 1004 (7th Cir. 2004), and Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996), does not require a different result.  According to Plaintiff, the cited cases stand for the proposition that, "[e]ven when a claimant *merely* has moderate limitations of concentration[,] persistence, and pace, this fact must be mentioned [in an ALJ's hypothetical to a VE]."  (Docket

Entry 13 at 16 (emphasis in original).)  As the Seventh Circuit

recently observed in dispatching a similar argument:

> None of these cases is on point.  None holds that a
> limitation to unskilled work can never adequately account
> for moderate limitations in concentration, persistence
> and pace.  And none involved a medical expert who
> effectively translated an opinion regarding the
> claimant's mental limitations into an RFC assessment [on
> which]  .  .  .  the ALJ's hypothetical relied  .  .  .
> [reflecting that even] given the claimant's mental
> limitations, [the claimant] could still perform
> repetitive, low-stress work. . . .  [In cases of that
> sort, courts have] held that the ALJ reasonably relied on
> the consultant's mental RFC assessment in formulating the
> hypothetical to the VE.

Milliken v. Astrue, 397 Fed. Appx. 218, 221-22 (7th Cir. 2010)

(distinguishing, inter alia, Young); see also Richter v.

Commissioner of Soc. Sec., 379 Fed. Appx. 959, 960-61 (11th Cir.

2010) (acknowledging that some decisions, including Ramirez and

Newton, had rejected proposition "that an ALJ generally accounts

for a claimant's deficiencies in concentration, persistence, and

pace by restricting the vocational expert's inquiry to simple,

routine tasks or unskilled work," but observing that, "where

medical evidence demonstrates that a claimant retains the ability

to engage in simple, routine, repetitive tasks or unskilled work

despite deficiencies in concentration, persistence, and pace, our

sister circuits have found that these restrictions sufficiently

account for such deficiencies").

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision

finding no disability be **AFFIRMED,** Defendant's motion for judgment

on the pleadings (Docket Entry 14) be **GRANTED,** Plaintiff's motion

for judgment on the pleadings (Docket Entry 12) be **DENIED,** and this action be **DISMISSED WITH PREJUDICE.**


                                    /s/ L. Patrick Auld
                                  **L. Patrick Auld**
                          **United States Magistrate Judge**


Date:  April 16, 2012